Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES BERKLAND,<br><br>                              Plaintiff,<br><br>          vs.<br><br>EMAGIN CORPORATION, JILL J. WITTELS, ERIC BRADDOM, PAUL CRONSON, ELLEN RICHSTONE, ANDREW G. SCULLEY, and STEPHEN SEAY,<br><br>                              Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, James Berkland ("Plaintiff"), by and through his attorneys, alleges upon

information and belief, except for those allegations that pertain to him, which are alleged upon

personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.        Plaintiff brings this stockholder action against eMagin Corporation ("eMagin" or

the "Company") and the Company's Board of Directors (the "Board" or the "Individual

Defendants", collectively with the Company, the "Defendants"), for violations of Sections 14(a)

and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

Defendants' efforts to sell the Company to Samsung Display Co., Ltd. ("Parent"), through merger

vehicles Emerald Intermediate, Inc. ("Merger Sub 1") and Emerald Merger Sup, Inc. ("Merger Sub 2", collectively with Merger Sup 1 and Parent, "Samsung Display") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2.    The terms of the Proposed Transaction were memorialized in a May 17, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").

3.    Under the terms of the Merger Agreement, each existing share of eMagin common stock will be converted into the right to receive $2.08 in cash.   The Proposed Transaction values the Company at approximately $218 million.

4.    On June 20, 2023, the Company filed a Preliminary Proxy Statement on Form PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

5.    The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction.

6.    The Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for eMagin, provided by eMagin management to the Board and the Board's financial advisor Nomura Securities International, Inc. ("Nomura"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Nomura, if any, and provide to the Company and the Board.

7.    This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Massachusetts and, at all times relevant hereto, has been an eMagin stockholder.

9.      Defendant eMagin engages in the design, develop, manufacture, and market of organic light emitting diode (OLED) miniature displays on-silicon micro displays, virtual imaging products that utilize OLED micro displays, and related products in the United States and internationally.  The Company is incorporated in Delaware and has its principal place of business at 700 South Drive, Suite 201, Hopewell Junction, NY 12533.  Shares of eMagin common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "EMAN".

10.      Defendant Jill J. Wittels ("Wittels") has been a Director of the Company at all relevant times.  In addition Defendant Wittels serves as the Chair of the Company Board.

11.      Defendant Eric Braddom ("Braddom") has been a director of the Company at all relevant times.

12.      Defendant Paul Cronson ("Cronson") has been a director of the Company at all relevant times.

13.      Defendant Ellen Richstone ("Richstone") has been a director of the Company at all relevant times.

14.      Defendant Andrew G. Sculley ("Sculley") has been a director of the Company at all relevant times.  In addition Defendant Sculley serves as the Company's Chief Executive Officer ("CEO").

15.      Defendant Stephen Seay ("Seay") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 10 - 15 are collectively referred to as the "Individual Defendants."

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

20.     eMagin Corporation engages in the design, develop, manufacture, and market of organic light emitting diode (OLED) miniature displays on-silicon micro displays, virtual imaging products that utilize OLED micro displays, and related products in the United States and internationally.

21.     The Company's most recent performance press release, revealing performance results preceding the announcement of the Proposed Transaction, indicated impressive clinical success.

22.     In the May 11, 2023 press release announcing its Q1 2023 financial results, the Company saw financial progress. CEO Sculley stated, "We are pleased with our total sales backlog, which remains strong at $16.0 million, comparable to the end of Q4 2022, reflecting continued strength in bookings for the military and medical markets, and expect to receive additional follow-on orders under the ENVG-B programs this quarter."

23.     The Individual Defendants have caused eMagin to enter into the Proposed Transaction without providing requisite information to eMagin stockholders such as Plaintiff.

***The Proposed Transaction***

24.     On May 17, 2023, eMagin issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**HOPEWELL JUNCTION, N.Y. – May 17, 2023 – eMagin Corporation (NYSE American: EMAN)** ("eMagin" or the "Company"), a U.S.-based leader in the development, design, and manufacture of Active-Matrix OLED microdisplays for high-resolution, AR/VR and other near-eye imaging products, today announced that the Company has entered into a definitive merger agreement with Samsung Display Co., Ltd. ("Samsung Display"), a subsidiary of Samsung Electronics Co., Ltd. (KRX: 005930) and manufacturer and distributor of display products. Under the terms of the agreement, all outstanding shares of eMagin common stock on a fully diluted basis will be acquired for $2.08 per share in cash, in a transaction valued at approximately $218 million.

The purchase price represents a premium of approximately 10% to eMagin's closing stock price of $1.89 on May 16, 2023, and a premium of approximately 24% to eMagin's six-month volume-weighted average price of $1.68.

"This agreement is a validation of our technical achievements to date including our proprietary direct patterning (dPd) technology, provides a significant premium for our shareholders, and represents a win for our customers and employees," said Andrew G. Sculley, eMagin's Chief Executive Officer. "By teaming with Samsung Display, we will be able to achieve the full potential of our next-generation

microdisplay technology with a partner that can provide the resources and expertise we will need to scale production. Moreover, our customers will benefit from resulting improvements to our production capabilities in terms of yield, efficiency, and quality control."

President & Chief Executive Officer of Samsung Display, Joo Sun Choi, emphasized the strategic significance of the acquisition, stating, "We expect XR (Extended Reality) devices to have significant potential of growth in the future, and eMagin's technology in this space will enable Samsung to offer innovative products to more customers and strengthen its XR-related business."

Following the closing of the transaction, eMagin will continue to maintain its operations and facilities in Hopewell Junction, NY.

Approvals and Timing

eMagin's Board of Directors has unanimously approved the transaction and is recommending that eMagin's stockholders approve the transaction and adopt the merger agreement at a special meeting of stockholders to be called in connection with the transaction. Certain of eMagin's stockholders who collectively hold approximately 98% of the total voting power of eMagin's Series B Convertible Preferred Stock, which is convertible into approximately 21% of the total voting power of eMagin's common stock on a fully diluted basis, have entered into a support agreement pursuant to which they have committed to vote such shares in favor of the transaction.

The transaction is expected to close in the second half of 2023, subject to the approval by eMagin's stockholders, applicable regulatory approvals and other customary closing conditions. Until closing, eMagin and Samsung Display remain separate and independent companies.

Advisors

Nomura Securities International, Inc. is serving as exclusive financial advisor to eMagin. White & Case LLP and Goodwin Procter LLP are acting as the Company's legal counsel. Evercore Inc. is serving as exclusive financial advisor to Samsung Display and O'Melveny & Myers LLP is acting as legal counsel.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

25.     On June 20, 2023, the eMagin Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning eMagin Financial Projections*

26.     The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

27.     The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that eMagin management provided to the Board and Nomura. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

28.     With regard to the *Base Case Forecast* set of projections prepared by eMagin management, the Preliminary Proxy Statement fails the following:

      a.  Adjusted EBITDA; and

      b.  Unlevered Free Cash Flow (Burdened by Stock Based Compensation).

29.     With regard to the *Illustrated Upside Case Forecast* set of projections prepared by eMagin management, the Preliminary Proxy Statement fails to disclose Unlevered Free Cash Flow (Burdened by Stock Based Compensation).

30.     With regard to the *Mass Manufacturing Contribution Analysis* set of projections prepared by eMagin management, the Preliminary Proxy Statement fails to disclose the specific inputs and assumptions used to determine the utilized assumption as that there would be a 15% market growth in 2028E AV/VR Market and 10% in 20209E V/VR Market and 2030E AR/VR Market, respectively.

31.    Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

32.    The Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

_Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Nomura_

33.    In the Preliminary Proxy Statement, Nomura describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.

34.    With respect to the _Precedent Transactions Analysis_, the Preliminary Proxy fails to disclose:

   a.  The specific metrics for each precedent transaction observed;

   b.  The specific date on which each precedent transaction was announced;

   c.  The specific date on which each precedent transaction closed;

   d.  The aggregate value of each precedent transaction.

35.    With respect to the _Comparable Companies Analysis_, the Preliminary Proxy fails to disclose the specific metrics for each comparable company observed.

36.    With respect to the _Discounted Cash Flow Analysis – Base Case_, the Preliminary Proxy Statement fails to disclose:

   a.  The terminal value for the Company calculated;

   b.  The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of 2.0% to 3.0%;

c. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 11.7% to 13.7%;

d. The Company's weighted average cost of capital utilized;

e. The beta for the Company utilized; and

f. The net present value of the Company's U.S federal and state net operating losses; and

g. The number of Company diluted shares outstanding.

37. With respect to the *Discounted Cash Flow Analysis – Illustrative Upside Case*, the Preliminary Proxy Statement fails to disclose:

a. The terminal value for the Company calculated;

b. The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rate range of 2.0% to 3.0%;

c. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 10.7% to 14.7%;

d. The Company's weighted average cost of capital utilized;

e. The beta for the Company utilized; and

f. The net present value of the Company's U.S federal and state net operating losses; and

g. The number of Company diluted shares outstanding

38. With respect to the *Equity Research Analyst Price Target Statistics*, the Preliminary Proxy Statement fails to disclose.

a. The specific Analyst stock price targets utilized; and

    b.   The specific Wall Street firms and/or analysts which generated the utilized price targets.

39.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

40.    Without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public eMagin stockholder.

41.    The Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

42.    Plaintiff repeats all previous allegations as if set forth in full herein.

43.    Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

44.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

45.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any Preliminary Proxy Statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

46.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

47.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

48.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

49.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his

shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

50.    Plaintiff repeats all previous allegations as if set forth in full herein.

51.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

52.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

53.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of eMagin's business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

54.    The Individual Defendants acted as controlling persons of eMagin within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause eMagin to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled eMagin and all of its employees.  As alleged above, eMagin is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact

and that states all material facts required in it or necessary to make the statements contained

therein not misleading;

D.        Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.        Granting such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: June 28, 2023                                **BRODSKY & SMITH**

                                By: *Evan J. Smith*
                                        Evan J. Smith
                                        240 Mineola Boulevard
                                        Mineola, NY  11501
                                        Phone: (516) 741-4977
                                        Facsimile (561) 741-0626

                                        *Counsel for Plaintiff*